**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Cooper Alison-Mayne (SBN 343169)
cmayne@galipolaw.com
21800 Burbank Boulevard, Suite 310
Woodland Hills, CA 91367
Phone: (818) 347-3333

*Attorneys for Plaintiff*

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

D.A., by and through his guardian ad litem, EARLINE JOHNSON,

Plaintiff,

vs.

CITY OF BALDWIN PARK and OFFICER JEREMY MIRANDA,

Defendants.

Case No.: 2:26-cv-02489-HDV-AJR
Honorable Hernan D. Vera

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS ONE AND SIX OF THE FIRST AMENDED COMPLAINT [DKT. 23]**

Date: October 1, 2026
Time: 10:00 a.m.
Crtrm: 5B

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 5

II. PROCEDURAL HISTORY .......... 5

III. STATEMENT OF FACTS .......... 6

IV. LEGAL STANDARD .......... 8

V. ARGUMENT .......... 10

A. Plaintiff Pleads the Specific Facts the Court Found Missing .......... 10

B. Count One States a Fourteenth Amendment Claim Because Plaintiff Plausibly Alleges Deliberate Indifference .......... 12

1. The Deliberate Indifference Standard Governs Because Actual Deliberation Was Practical .......... 12

2. Plaintiff Plausibly Alleges Deliberate Indifference .......... 14

C. Count Six States a Bane Act Claim Because the Same Allegations Show Reckless Disregard of D.A.'s Rights .......... 17

VI. CONCLUSION .......... 18

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

## TABLE OF AUTHORITIES

**Cases**


*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....8, 9, 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....8

*Bingue v. Prunchak*, 512 F.3d 1169 (9th Cir. 2008)....13

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011)....9, 15

*Capogrosso v. Sup. Ct. of N.J.*, 588 F.3d 180 (3d Cir. 2009)....9

*Carrasquillo v. City of New York*, 324 F. Supp. 2d 428 (S.D.N.Y. 2004)....16

*Checki v. Webb*, 785 F.2d 534 (5th Cir. 1986)....16

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)....12, 13, 16

*Daniels v. Williams*, 474 U.S. 327 (1986)....15

*Davidson v. Cannon*, 474 U.S. 344 (1986)....15

*Davis v. Passman*, 442 U.S. 228 (1979)....8

*Erickson v. Pardus*, 551 U.S. 89 (2007)....9

*Flores v. City of S. Bend*, 997 F.3d 725 (7th Cir. 2021)....12, 14

*Hammel v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 955 F. Supp. 2d 1205 (D. Or. 2013)....14

*Hill v. Shobe*, 93 F.3d 418 (7th Cir. 1996)....14, 16

*Ileto v. Glock, Inc.*, 349 F.3d 1191 (9th Cir. 2003)....8

*James v. Pelayo*, No. 1:25-cv-01399-JLT-SAB, 2026 U.S. Dist. LEXIS 45723 (E.D. Cal. Mar. 5, 2026)....16

*Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993)....9

*Lovett v. Hitchcock*, 192 Cal. App. 2d 806 (1961)....15

*N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578 (9th Cir. 1983)....9

*Nicholson v. City of Los Angeles*, 935 F.3d 685 (9th Cir. 2019)....14

*Ochoa v. City of Mesa*, 26 F.4th 1050 (9th Cir. 2022)....13

*Parratt v. Taylor*, 451 U.S. 527 (1981)....10, 15, 16

*Patel v. Kent Sch. Dist.*, 648 F.3d 965 (9th Cir. 2011)....14, 15, 16

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008)............................................12, 13

*Reese v. Cnty. of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)..........................17, 18

*Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947 (2012).............................18

*Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001 (9th Cir. 2008) ..............................9

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011).........................................................12

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ..................................................9

*Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078 (9th Cir. 2009)...........12

**Statutes**

42 U.S.C. § 1983 .......................................................................................................9

Cal. Civ. Code § 52.1 ...............................................................................................17

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................8, 9

Fed. R. Civ. P. 12(b)(6) ......................................................................... passim

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Court dismissed the original Complaint because Plaintiff alleged Officer Miranda's state of mind in conclusory terms and offered no facts about "what Officer Miranda saw, when he saw it, or why he nonetheless proceeded." (Order, Dkt. 21, at 3–4.) In the First Amended Complaint ("FAC"), Plaintiff answers each of those questions. Officer Miranda was stopped at a red light facing the crosswalk and saw ten-year-old D.A. riding his bicycle in it, with the pedestrian signal in D.A.'s favor, moments before he moved. (FAC ¶¶ 15–18, 20–21.) He decided to make a traffic stop of a Camry that had already completed a red-light violation and accelerated toward the crosswalk D.A. was still crossing. (FAC ¶¶ 19–20, 22.) When glare from the sun then prevented him from seeing his path, by his own admission, he accelerated through the crosswalk anyway, with no emergency and no pursuit, and struck D.A. (FAC ¶¶ 21–23.)

Those facts describe a choice, not an accident. An officer who fails to notice a bicyclist while turning is negligent. An officer who has just seen a child in the crosswalk ahead of him, knows the walk signal is on, knows he cannot see his path, and accelerates through that crosswalk anyway has consciously disregarded a known and obvious risk of serious injury or death. That is not just negligence, it is deliberate indifference to a known risk, and it violated D.A.'s Fourteenth Amendment right to substantive due process. Defendants' central response, that the glare allegation means Officer Miranda was "unaware" of D.A., turns the allegation on its head and draws an inference in Defendants' own favor that Rule 12(b)(6) does not permit. (Mot. at 7–8.) The motion should be denied.

## II. PROCEDURAL HISTORY

Plaintiff filed this action on March 9, 2026. (Dkt. 1.) The Magistrate Judge appointed D.A.'s mother, Earline Johnson, as his guardian ad litem on March 18, 2026. (Dkt. 11.) On April 14, 2026, Defendants moved to dismiss Counts One

(Fourth Amendment), Two (Fourteenth Amendment), Six (intentional infliction of emotional distress), and Eight (Bane Act) of the Complaint. (Dkt. 13.) Plaintiff opposed (Dkt. 15), and the parties stipulated to dismiss Count Six with prejudice (Dkts. 16, 18). The Court heard argument on June 11, 2026, and took the motion under submission. (Dkt. 20.)

On July 6, 2026, the Court granted the motion with leave to amend, holding that Plaintiff's allegations of intent, deliberation, and knowledge were legal conclusions unsupported by facts about what Officer Miranda saw, when he saw it, or why he proceeded, and that a left turn "without more" was consistent with the obvious alternative explanation of ordinary negligence. (Dkt. 21 at 3–5.) Plaintiff filed the FAC on July 24, 2026. (Dkt. 22.) In the FAC, Plaintiff drops the Fourth Amendment claim, pleads the Fourteenth Amendment claim on a deliberate indifference theory, and adds detailed factual allegations about the sequence of events at the intersection. (FAC ¶¶ 15–24, 29–32.) On August 7, 2026, Defendants moved to dismiss Count One (Fourteenth Amendment substantive due process) and Count Six (Bane Act) of the FAC. (Dkt. 23.) The Court reset the hearing to October 1, 2026. (Dkt. 24.) Defendants have not challenged the FAC's remaining claims for battery, motor vehicle negligence, negligent use of force, and negligent infliction of emotional distress.

## III. STATEMENT OF FACTS

On May 14, 2025, at the intersection of Pacific Avenue and Vineland Avenue in the City of Baldwin Park, Plaintiff D.A., a 10-year-old boy, was riding his bicycle when he was struck by a patrol vehicle operated by Defendant Officer Jeremy Miranda. (FAC ¶¶ 14, 16, 23.) Officer Miranda was on duty as a sworn officer of the Baldwin Park Police Department. (FAC ¶¶ 14–15.) Officer Miranda made a left turn northbound onto Vineland Avenue and drove his patrol vehicle into D.A., throwing him from his bicycle onto the pavement. (FAC ¶ 23.) Officer Miranda never activated his siren at any time before or during the collision. (FAC ¶



LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

24.) D.A. sustained significant injuries, including a fractured arm and abrasions to his face, chin, stomach, and legs. (FAC ¶ 25.)

Plaintiff also alleges the following facts about how the collision happened. At approximately 6:58 a.m., Officer Miranda was stopped at the limit line in the eastbound number one lane of Pacific Avenue for a red signal at Vineland Avenue, directly facing the intersection and the marked crosswalk on its north side. (FAC ¶¶ 15–16, 18.) D.A. was stopped on the sidewalk at the corner, waiting to ride westbound across Vineland Avenue in that crosswalk. He waited for the traffic signal to turn green and for the pedestrian signal to phase to "walk," and then began riding across within the marked crosswalk. (FAC ¶¶ 16–17.) As D.A. was crossing, a gray Toyota Camry traveling northbound on Vineland Avenue ran the red traffic signal, entered the intersection, and nearly struck D.A. in the crosswalk. D.A. paused, avoided the Camry, and continued riding across the crosswalk. (FAC ¶ 17.) Officer Miranda, who was stopped at the limit line directly facing the intersection, observed the Camry run the red light. The Camry's near-collision with D.A. occurred in the intersection directly in front of Officer Miranda's patrol vehicle and within his field of view. (FAC ¶ 18.)

Officer Miranda decided to initiate a traffic enforcement stop of the Camry. He activated his overhead emergency lights but not his siren. He then accelerated from a complete stop to approximately 20 miles per hour into the intersection and began a left turn northbound onto Vineland Avenue, toward the crosswalk that D.A. was actively crossing. (FAC ¶ 19.) D.A. was visible in the crosswalk from Officer Miranda's vantage point as he accelerated into the turn. (FAC ¶ 20.) By his own admission, Officer Miranda had glare from the sun in his view as he made the left turn, such that he could not see what was in his path. Despite knowing that his vision was obscured, that the crosswalk was controlled by a pedestrian signal showing "walk," and that a child on a bicycle had nearly been struck in that same crosswalk moments earlier, Officer Miranda accelerated through the crosswalk

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS DKG

without stopping, slowing, or yielding. (FAC ¶ 21.) There was no emergency and no exigency. The Camry had committed a completed, routine traffic violation; no pursuit, chase, or split-second judgment was required, and Officer Miranda had time to observe the intersection, deliberate, and confirm that the crosswalk was clear before proceeding through it. (FAC ¶ 22.) As he completed the turn, the front of his patrol vehicle struck D.A. in the crosswalk. (FAC ¶ 23.)

In Count One, Plaintiff alleges that Officer Miranda had time to deliberate, controlled the timing and manner of his own entry into the intersection, knew the crosswalk was occupied or likely occupied, knew glare prevented him from seeing his path, and accelerated through anyway, in deliberate indifference to a known and obvious risk of severe injury or death that no routine traffic stop could justify. (FAC ¶¶ 29–32.) In Count Six, Plaintiff alleges that Officer Miranda interfered with D.A.'s rights to due process and bodily integrity under the United States and California Constitutions by the application of physical force with his patrol vehicle, with the specific intent shown by his reckless disregard of those rights. (FAC ¶¶ 66–71.)

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) must be read in conjunction with Federal Rule of Civil Procedure 8, which "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 requires the plaintiff to make only (1) a short and plain statement of the court's jurisdiction, (2) a short and plain statement of the claim showing that the plaintiff is entitled to relief, and (3) a demand for judgment and relief. *Davis v. Passman*, 442 U.S. 228 (1979); *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). Under federal notice pleading, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

the allegations in the complaint." *Id.* at 563. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556. Plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the element. *Id.* In deciding whether a pleading states a plausible claim for relief, the court considers the complaint's factual allegations, "together with all reasonable inferences" from those allegations. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011); *Capogrosso v. Sup. Ct.*, 588 F.3d 180, 184 (3rd Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Further, under federal notice pleading, courts are liberal in construing complaints in favor of plaintiffs, and allegations of material fact are taken as true and construed in the light most favorable to the pleader. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1003-04 (9th Cir. 2008). In reviewing a dismissal for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6), the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the appellant. *N. Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983).

Civil rights actions are governed by the pleading requirements of Federal Rules of Civil Procedure 8. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). There is no heightened pleading requirement for civil rights cases, and the United States Supreme Court has repeatedly rejected attempts by the Courts of Appeals to impose heightened pleading requirements in civil rights cases. *Id.*; *Leatherman v. Tarrant Cnty.*, 507 U.S. 163 (1993). To assert a claim under 42 U.S.C. § 1983, a

plaintiff has an obligation to put the defendants and the court on notice of what claims are raised in his or her complaint by properly alleging that she has been deprived a federal statutory or constitutional right by a person acting under color of state or local law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

## V. ARGUMENT

### A. Plaintiff Pleads the Specific Facts the Court Found Missing

Plaintiff now alleges every category of fact the Court found absent from the original Complaint. The Court dismissed that pleading because Plaintiff alleged intent, deliberation, and knowledge as labels, with no facts "about what Officer Miranda saw, when he saw it, or why he nonetheless proceeded," and no "circumstance from which the requisite intent could be inferred." (Order at 3–4.) Plaintiff now alleges each of those things: (1) what Officer Miranda saw, (2) when he saw it, (3) why he proceeded, and (4) the circumstance from which his state of mind can be inferred.

First, what he saw: Officer Miranda had a clear view of the crosswalk, and of D.A. in it, before he moved. He was stopped at the limit line directly facing the intersection and the crosswalk, he watched the Camry run the red light "directly in front of" his patrol vehicle and "within his field of view," where D.A. was crossing, he could see the pedestrian signal showing "walk," and D.A. "was visible in the marked crosswalk from Officer Miranda's vantage point as he accelerated into the turn." (FAC ¶¶ 15, 18, 20–21, 29.)

Second, when he saw it: Officer Miranda saw D.A. in the crosswalk before he decided to move, not after. D.A. was in the crosswalk "moments earlier," while Officer Miranda was still stopped, and D.A. "entered the crosswalk before Officer Miranda's patrol vehicle reached it." (FAC ¶¶ 18–19, 21, 30.) Officer Miranda saw the child, then chose to initiate a stop, then accelerated into the turn, then lost sight of his path to sun glare, then continued through the crosswalk without slowing. (FAC ¶¶ 18–21.) The knowledge came first.

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

Third, why he proceeded: Officer Miranda proceeded for a reason that carried no urgency. He wanted to make a traffic stop of the Camry for a red-light violation that was already complete; no pursuit was underway, no siren was activated, and he "controlled the timing and manner of his own entry into the intersection." (FAC ¶¶ 19, 22, 24, 29.) "No urgency prevented him from waiting the few seconds necessary for D.A. to clear the crosswalk, or from confirming that the crosswalk was clear before accelerating through it." (FAC ¶ 29.)

Fourth, the circumstance from which his state of mind can be inferred: the original Complaint offered no reason an officer making a left turn would drive into a child, and the FAC supplies one. Officer Miranda watched a Camry run the red light directly in front of him, having just seen D.A. in the crosswalk; he decided to initiate a traffic enforcement stop of the Camry and accelerated into the turn; and when glare then prevented him from seeing what was in his path, he continued without slowing. (FAC ¶¶ 17–21.) Those allegations supply a motive for the recklessness. Plaintiff does not allege that Officer Miranda set out to hit anyone. Plaintiff alleges that he set a goal, catching the Camry, and then disregarded what he already knew about the crosswalk in order to reach it. That is the circumstance from which deliberate indifference can plausibly be inferred.

Taken together, these allegations supply the "more" that the Court found missing when it held that a left turn, without more, was equally consistent with negligence. (Order at 4.) The allegations that (1) Officer Miranda was stopped facing the crosswalk with a clear view of it, (2) D.A. was in the crosswalk with the walk signal in his favor and visible to Officer Miranda before he moved, (3) Officer Miranda activated his lights but not his siren and accelerated from a stop to approximately 20 miles per hour into the turn, (4) he admitted glare prevented him from seeing his path and continued without slowing, and (5) the traffic violation was complete and no emergency existed, are the kind of "factual content" that allows the Court "to draw the reasonable inference that the defendant is liable for

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

the misconduct alleged." *Iqbal*, 556 U.S. at 678. A left turn accelerated blind through an occupied crosswalk with the walk signal on, moments after seeing a child there, with no emergency and nothing requiring the officer to enter the intersection at that moment, is not. On those facts conscious disregard is at least as plausible as inadvertence, and at the pleading stage that is enough: "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Defendants do not argue that negligence is the only plausible reading of these facts, only that it is one available reading. Under *Starr*, that is not a basis for dismissal.

**B. Count One States a Fourteenth Amendment Claim Because Plaintiff Plausibly Alleges Deliberate Indifference**

1. <u>The Deliberate Indifference Standard Governs Because Actual Deliberation Was Practical</u>

Two standards govern whether an officer's conduct "shocks the conscience," and which one applies depends on whether the officer had time to deliberate. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008); *Tennison v. City & Cnty. of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009). Where an officer faces circumstances that "escalate so quickly that the officer must make a snap judgment," the plaintiff must show a purpose to harm unrelated to legitimate law enforcement objectives. *Porter*, 546 F.3d at 1137–40. Where "actual deliberation is practical," by contrast, deliberate indifference to a known or obvious risk shocks the conscience. *Lewis*, 523 U.S. at 851; *Porter*, 546 F.3d at 1137–39; *Tennison*, 570 F.3d at 1089. The distinction exists because "behavior considered reasonable in an emergency situation might be criminally reckless when state actors have time to appreciate the effects of their actions." *Flores v. City of S. Bend*, 997 F.3d 725, 729 (7th Cir. 2021).

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

The deliberate indifference standard applies here because Officer Miranda had time to deliberate. He began from a complete stop at a red light and watched the relevant events unfold in front of him before he moved. (FAC ¶¶ 15, 17–18.) The decision he then made, whether to initiate a traffic stop for a completed Vehicle Code violation, was discretionary; there was no ongoing crime, no ongoing danger to anyone, no pursuit, and no siren, and the only law enforcement interest at stake was a citation for a completed infraction. (FAC ¶¶ 1, 19, 22, 24, 29, 31.) Nothing required him to enter the intersection at any particular moment; he "controlled the timing and manner of his own entry." (FAC ¶ 29.)

Defendants argue that the purpose-to-harm standard applies because this was a "fast paced circumstance[] presenting competing public safety obligations," citing *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022). (Mot. at 9.) But *Ochoa* illustrates why that standard does not fit here. There, officers confronted an armed man under the influence of methamphetamine who had driven at police, barricaded himself in a stranger's home, and refused commands while children were evacuated through a window; the Ninth Circuit applied the purpose-to-harm standard because, given "the urgency of that moment," the officers had to "react instantly, without deliberation." *Id.* at 1057. The other cases applying that standard involve the same kind of unfolding emergency: the high-speed motorcycle chase in *Lewis*, 523 U.S. at 836–37, and the high-speed pursuit involving a dozen units in *Bingue v. Prunchak*, 512 F.3d 1169, 1171 (9th Cir. 2008). Those cases all involve officers responding to serious crimes and making decisions in the middle of "an evolving set of circumstances" that demands "fast action." *Porter*, 546 F.3d at 1139. An officer choosing whether to pull away from a red light to pull someone over for a minor infraction is not in that position, and Defendants cite no case treating a routine traffic stop as an emergency. Any contention that the situation nonetheless required an instant judgment contradicts Plaintiff's allegations and cannot be resolved against Plaintiff on a motion to dismiss. Because actual

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

deliberation was practical, deliberate indifference is the standard the Court should apply.

2. Plaintiff Plausibly Alleges Deliberate Indifference

Deliberate indifference means knowing of a risk and consciously refusing to avoid it. The plaintiff must show that the officer "disregarded a known or obvious consequence of his action," and the inquiry "should go to the jury if any rational factfinder could find this requisite mental state." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011); see also *Nicholson v. City of Los Angeles*, 935 F.3d 685 (9th Cir. 2019). In the vehicle context, the line between negligence and a constitutional violation is whether the official "knew an accident was imminent but consciously and culpably refused to prevent it." *Hill v. Shobe*, 93 F.3d 418, 421 (7th Cir. 1996); see also *Flores*, 997 F.3d at 729 (officer must have "had actual knowledge of impending harm which he consciously refused to prevent") (quoting *Hill*, 93 F.3d at 421). Defendants themselves cite *Hill* for that formulation. (Dkt. 13 at 6.)

The required knowledge is knowledge of the risk, not sight of the victim at the moment of impact. In *Flores*, an officer responding to a routine traffic stop sped through a red light and killed an uninvolved driver; the defendants argued he "could not have known that he created an imminent risk of fatal injury if he had an obstructed view of oncoming traffic." 997 F.3d at 728–29. The Seventh Circuit rejected the argument: "the law does not require perfect knowledge on his part: criminal recklessness is enough, and driving blind through an intersection at 78–98 miles per hour could certainly be viewed by a jury as meeting that standard." *Id.* at 729. Courts in this Circuit agree that the standard requires actual knowledge of a "substantial risk of serious harm," but not "a showing that [the driver] saw these specific pedestrians in the crosswalk before she struck them." *Hammel v. Tri-Cnty. Metro. Transp. Dist. of Or.*, 955 F. Supp. 2d 1205, 1213 (D. Or. 2013). California law draws the same line for willful misconduct: intentionally driving into a path

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

one knows may be occupied is willful misconduct, while driving into it because one did not realize it was there is negligence, and the actor's knowledge may be proven circumstantially. *Lovett v. Hitchcock*, 192 Cal. App. 2d 806 (1961).

Plaintiff's allegations satisfy that standard. Officer Miranda had just seen the child in the crosswalk, knew the walk signal was on, knew he could not see his path, and accelerated through anyway. (FAC ¶¶ 18, 20–21.) A rational factfinder could find that he consciously disregarded a known and obvious risk of serious injury to whoever was in that crosswalk, which is enough to send the question to a jury and more than enough to state a claim. *Patel*, 648 F.3d at 974. Defendants offer three responses, and none is persuasive.

First, Defendants misread the glare allegation. Because Plaintiff alleges that Officer Miranda "could not see what was in his path," Defendants argue the Court "must accept as true the fact that Officer Miranda was unaware of what was in the direct path of his vehicle," so that "all that is pled is that Officer Miranda failed to exercise due care." (Mot. at 8.) Plaintiff does not allege that Officer Miranda was unaware of D.A. Plaintiff alleges that he saw D.A. in the crosswalk before the turn, knew the crosswalk was occupied or likely occupied, knew the walk signal was on, and then lost sight of his path to sun glare "as he made the left turn." (FAC ¶¶ 18, 20–21, 30.) The glare allegation does not negate his knowledge; it describes the condition under which he chose to continue. An officer who knows a child is in the crosswalk ahead of him and then loses the ability to see that child has every reason to stop. Defendants' reading treats "could not see" as if it meant "did not know," and it draws that inference against the pleader, which Rule 12(b)(6) does not permit. *Cafasso*, 637 F.3d at 1054.

Second, the negligence cases Defendants rely on do not reach these facts. *Parratt v. Taylor*, 451 U.S. 527 (1981), *Daniels v. Williams*, 474 U.S. 327 (1986), and *Davidson v. Cannon*, 474 U.S. 344 (1986), hold that negligence does not implicate the Due Process Clause, which Plaintiff does not dispute. The Supreme

Court answered the "automobile accident" concern Defendants quote from *Parratt* in *Lewis* itself, which recognized that an officer's deliberate indifference in operating a vehicle can "rise to the conscience-shocking level" where deliberation is practical. *Lewis*, 523 U.S. at 849; see also *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986) ("Where a citizen suffers physical injury due to a police officer's negligent use of his vehicle, no section 1983 claim is stated. . . . It is a different story when a citizen suffers or is seriously threatened with physical injury due to a police officer's intentional misuse of his vehicle."). The vehicle cases Defendants cite were each dismissed because the plaintiff alleged dangerous driving but not knowledge of a specific danger. In *James v. Pelayo*, No. 1:25-cv-01399-JLT-SAB, 2026 U.S. Dist. LEXIS 45723 (E.D. Cal. Mar. 5, 2026), a transport officer rolled a van while attempting an unsafe pass; the court dismissed because there were "no additional allegations to support an inference that she drove in a reckless manner *with knowledge of a specific danger to Plaintiff*." *Id.* at *16 (emphasis added); Mot. at 6–7. The same was true in *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 436 (S.D.N.Y. 2004) (bus driver drove too fast for icy conditions), and *Hill*, 93 F.3d at 421 (officer drove too fast for the road). Plaintiff alleges what was missing in each of those cases: knowledge of a specific danger to a specific child in a specific crosswalk, moments before the officer accelerated into it. (FAC ¶¶ 18, 20–21, 30.)

Third, the existence of a law enforcement purpose does not change the analysis. Defendants argue that Officer Miranda "engaged in legitimate law enforcement objectives" because he was enforcing the Vehicle Code. (Mot. at 9.) Under the deliberate indifference standard, the question is whether the officer consciously disregarded a known or obvious risk, and a legitimate end does not license every means. *Patel*, 648 F.3d at 974. Plaintiff alleges that the interest at stake, a citation for a completed red-light violation, was trivial in comparison to the risk known to the officer of proceeding through the occupied crosswalk with his



LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

vision obscured. (FAC ¶¶ 22, 29, 31.) Whether that trade-off was conscience-shocking is a question for the factfinder. In sum, Plaintiff alleges that Officer Miranda had time to deliberate, knew a child was in the crosswalk, knew he could not see his path, and accelerated through anyway to make a routine traffic stop. Those allegations plausibly show deliberate indifference to a known and obvious risk, and Count One should proceed.

### C. Count Six States a Bane Act Claim Because the Same Allegations Show Reckless Disregard of D.A.'s Rights

The Bane Act claim turns on the same state-of-mind showing as Count One. The Bane Act provides a cause of action against a person who interferes, or attempts to interfere, "by threat, intimidation, or coercion," with rights secured by the Constitution or laws of the United States or of California. Cal. Civ. Code § 52.1. It requires "a specific intent to violate" the plaintiff's rights, which may be shown by evidence that the officer acted with "reckless disregard for a person's constitutional rights." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043–45 (9th Cir. 2018).

Defendants make three arguments against Count Six, and each fails for the reasons Count One survives. First, Defendants argue that because Plaintiff states no constitutional violation, the Bane Act claim fails "on this fact alone." (Mot. at 10.) For the reasons above, Plaintiff states a Fourteenth Amendment claim. The Bane Act claim also rests on D.A.'s rights to due process and bodily integrity under article I, section 7 of the California Constitution and other California law (FAC ¶¶ 66, 68), which Defendants do not address.

Second, Defendants argue that "negligence or error associated with the motor vehicle accident is not sufficient." (Mot. at 10.) Plaintiff agrees; that is why Plaintiff does not plead negligence in Count Six. The Court dismissed the Bane Act claim only because Plaintiff had not plausibly alleged that Officer Miranda acted "intentionally or with reckless disregard of Plaintiff's rights, rather than

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS DKG

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

negligently." (Order at 4.) Plaintiff now alleges reckless disregard with the same specificity that supports Count One, and under *Reese* reckless disregard is the showing of specific intent the Bane Act requires. 888 F.3d at 1045.

Third, Defendants rely on *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 958–59 (2012), but *Shoyoye* does not help them because it involved no volitional act at all. (Mot. at 10–11.) The plaintiff there was held in jail past his release date because of a clerical error; no officer made any decision about him, and the court held that a claim founded on that kind of "human error" did not involve the egregious conduct the statute targets. Id. at 958–59. Plaintiff alleges a volitional act, accelerating a patrol vehicle through a crosswalk, made with knowledge of the specific risk it created. Because Plaintiff plausibly alleges that Officer Miranda acted in reckless disregard of D.A.'s rights, Count Six should proceed.

## VI. CONCLUSION

Plaintiff has cured the deficiencies the Court identified in the original Complaint. In the FAC, Plaintiff alleges specific facts showing what Officer Miranda saw, when he saw it, and why he nonetheless proceeded, and those facts plausibly show that Officer Miranda acted with deliberate indifference to a known and obvious risk in violation of D.A.'s Fourteenth Amendment rights, and with reckless disregard of those rights for purposes of the Bane Act. Plaintiff respectfully requests that the Court deny Defendants' motion.

Dated: September 10, 2026 **LAW OFFICES OF DALE K. GALIPO**

By: */s/ Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiffs*

LAW OFFICES OF DALE K. GALIPO CIVIL RIGHTS ATTORNEYS

**Certificate of Compliance**

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 4,817 words, which complies with the 7,000 word limit of L.R. 11-6.1.

Dated: September 10, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Cooper Alison-Mayne*
Dale K. Galipo
Cooper Alison-Mayne
*Attorneys for Plaintiffs*