JONES MAYER
Gary S. Kranker, Esq., SBN: 146426
gsk@jones-mayer.com
Melissa M. Ballard, Esq., SBN: 185739
mmb@jones-mayer.com
Ryan M. Allein, Esq., SBN: 318078
rma@jones-mayer.com
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorney for Defendants,
CITY OF BALDWIN PARK; OFFICER JEREMY MIRANDA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.A., by and through his guardian ad litem, EARLINE JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF BALDWIN PARK and OFFICER JEREMY MIRANDA,<br><br>Defendants. | Case No. 2:26-cv-02489-HDV (AJRx)<br><br>*Assigned for All Purposes to: Honorable Hernan D. Vera*<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS ONE AND SIX, AS ALLEGED IN PLAINTIFF'S FIRST AMENDED COMPLAINT, PURSUANT TO F.R.C.P. RULE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 1, 2026<br>Time: 10:00 a.m.<br>Crtrm: 5B<br><br>First Amended Complaint Filed: July 24, 2026 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendants CITY OF BALDWIN PARK ("City") and OFFICER JEREMY MIRANDA ("Officer Miranda") (collectively referred to as "Defendants") hereby submit this Reply in Support of their Motion to Dismiss Counts One and Six, as Alleged in Plaintiff's First Amended Complaint, Pursuant to F.R.C.P. Rule 12(b)(6) ("Motion"). As set forth herein,

Plaintiff D.A., by and through his guardian ad litem, EARLINE JOHNSON ("Plaintiff") has failed to carry his burden of demonstrating he is entitled to the relief sought in counts one and six and, accordingly, the Motion should be granted without leave to amend.

Respectfully submitted.

Dated: September 17, 2026

JONES MAYER

By ______________________

Gary S. Kranker, Esq.
Melissa M. Ballard, Esq.
Ryan M. Allein, Esq.
Attorneys for Defendants CITY OF BALDWIN PARK and OFFICER JEREMY MIRANDA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff has failed to allege facts or cite to any authority establishing that Officer Miranda's alleged conduct on May 14, 2025 "shocked the conscience" under either the "purpose-to-harm" or "deliberate indifference" tests under the Fourteenth Amendment's Due Process Clause. Rather, the facts allege that Officer Miranda – in an attempt to initiate a traffic enforcement stop of a vehicle that sped through the intersection on a red light – accelerated at only 20 miles per hour and unfortunately struck Plaintiff who was riding his bicycle in the cross walk. First Amended Complaint ("FAC"), at ¶¶ 14-23. Throughout Plaintiff's Opposition to the Motion to Dismiss Counts One and Six ("Opposition"), Plaintiff repeatedly argues that somehow Officer Miranda had *knowledge* of Plaintiff's presence on the crosswalk before the incident. Essentially, Plaintiff alleges that Officer Miranda *intentionally* struck Plaintiff – a 10-year-old boy – in the crosswalk without reference to any facts demonstrating a "*conscious* or *reckless* disregard of the consequences of [his] act[.]" *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013) (emphasis added). As this Court stated in its original Order, the Complaint fails to allege that "Officer Miranda acted with the purpose of running him down, or with conscious disregard of an obvious risk to him, rather than simply failing to see a bicyclist while completing a turn." Order Granting Defendants' Motion to Dismiss ("Order"), at 4:2-11; Dkt. 21.

Simply put, the primary question remains- has Plaintiff sufficiently alleged that Officer Miranda's conduct constitutes " 'criminal recklessness – which is the same as deliberate indifference". *Flores v. City of South Bend*, 997 F.3d 725, 729 (7th Cir. 2021). This Court previously answered, "No" and Plaintiff has failed to allege additional facts to alter this conclusion. The FAC alleges a standard motor vehicle accident and there are no facts to indicate Officer Miranda acted with any level of intent. Thus, both counts one (Fourteenth Amendment) and six (Bane Act) should be dismissed.

Because the FAC alleges a standard motor vehicle accident, any potential amendment by Plaintiff as it relates to counts one and six would be futile – especially considering Plaintiff

already had an opportunity to address the deficiencies from his original Complaint, but failed to do so. *See Rich v. Schrader*, 823 F.3d 1205, 1209 (9th Cir. 2016). Accordingly, Plaintiff's potential *second* request for leave to amend should be denied and counts one and six should be dismissed with prejudice.

## II. STATEMENT OF FACTS[1]

On August 7, 2026, Defendants filed their Motion. Dkt. 23. In this Motion, Defendants submitted that Plaintiff had failed to sufficiently plead both the Fourteenth Amendment – Substantive Due Process (count one) and Bane Act (Cal. Civ. Code § 52.1) (count six) claims. In response, on September 10, 2026, Plaintiff filed his Opposition to Defendants' Motion to Dismiss Counts One and Six of the First Amended Complaint ("Opposition"). Dkt. 25. In this document, Plaintiff alleges: (1) he adequately pleaded the Fourteenth Amendment – Substantive Due Process claim (count one) and (2) he adequately pleaded the Bane Act claim (count six). *Id.*

## III. LEGAL STANDARD

While on a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party[,]" *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of constitutional claims, "[a] plaintiff must allege facts, not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

## IV. PLAINTIFF HAS INSUFFICIENTLY PLED A FOURTEENTH AMENDMENT – DUE PROCESS CLAIM

First and foremost, it is Defendants' position that as to the Fourteenth Amendment's Due Process claim, the "purpose-to-harm-test" applies. Plaintiff must establish facts showing that Officer Miranda " 'acted with a purpose to harm [Plaintiff] for reasons *unrelated to*

[1] Defendants incorporate by reference the "Statement of Facts" as articulated in the Motion. Motion, at 2:15-3:20; Dkt 23.

*legitimate law enforcement objectives*.' " *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022) (emphasis added). Specifically, as the FAC alleges, Officer Miranda observed the Camry – which was traveling northbound on Vineland – run the red light, enter the intersection, and nearly strike Plaintiff in the crosswalk. FAC, at ¶ 17; Dkt. 22. Based on these observations, Officer Miranda activated his patrol vehicle's overhead emergency lights with the intent of initiating a traffic enforcement stop of the Camry. *Id*. at ¶ 19; Dkt. 22. Overall, from the moment Officer Miranda observed the Camry run the red light to the moment he activated his patrol vehicle's overhead emergency lights in an attempt to initiate a traffic enforcement stop, this period of time was instantaneous and constituted a " 'fast paced circumstance[] presenting competing public safety obligations.' " *Ochoa*, 26 F.4th at 1056. Overall, the alleged facts establish that Officer Miranda engaged in legitimate law enforcement objectives when he enforced the Vehicle Code, see *Greyhound Lines, Inc. v. Dept. of C.H.P.*, 213 Cal.App.4th 1129, 1137 (2013), and thus, Plaintiff is unable to establish Officer Miranda had any ulterior motives apart from trying to pull the Camry over for the Vehicle Code violation.[2] *Ochoa*, 26 F.4th at 1056.

Nevertheless, Plaintiff in his Opposition argues the "deliberate indifference" test – not the "purpose-to-harm" test applies to his alleged Fourteenth Amendment claim. Opposition, at 13:10-15:10; Dkt. 25. Regardless of the appropriate test, Plaintiff nevertheless fails to allege sufficient facts to establish that Officer Miranda acted with deliberate indifference.

"Deliberate indifference is the *conscious* or *reckless* disregard of the consequences of one's acts or omissions." *Gantt*, 717 F.3d at 708 (emphasis added). It is a stringent standard of fault, "even higher than gross negligence." *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011). "To plead deliberate indifference, the plaintiff must show the state actor recognized an unreasonable risk and *actually intended* to expose an individual to such risk

[2] In his Opposition, Plaintiff attempts to argue that Officer Miranda's "interest at stake, a citation for a completed red-light violation, was trivial in comparison to the risk known to the officer of proceeding through the occupied sidewalk[.]" Opposition, at 16:26-28. However, *no* case has required – nor has Plaintiff cited to any case – requiring the law enforcement objective at issue must be a felony or some other serious offense. Rather, all that is required under the purpose-to-harm test is that Officer Miranda engaged in a legitimate law enforcement objective, *Ochoa*, 26 F.4th at 1056, which in this case was the enforcement of the Vehicle Code.

without regard for the consequences to that individual." *Bryant v. City of Pomona*, 2023 U.S. Dist. LEXIS 26946, at *6 (C.D. Cal. Feb. 16, 2023) (emphasis added). In other words, a state actor may be held liable where the actor "knows that something is going to happen but ignores the risk and exposes [an individual] to it." *L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir. 1996).

Again, as stated in the Motion, the Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary government action by prohibiting states from depriving people of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. The Supreme Court has held the verb "deprive" suggests a deliberate decision or action on the part of government officials to take life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). A simple lack of care "suggests no more than a failure to measure up to the conduct of a reasonable person" and does not implicate the abuse of power concerns that motivated the Founders when they included the Due Process Clause in our Constitution. *Id*. at 332.

For example, in *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), the Supreme Court considered "whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender." *Id*. at 836. Answering "no," the Court held that "in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience necessary for a due process violation." *Id*.

Although not entirety analogous to our case, the Court in *Araujo v. Coachella Valley Water Dist.*, 2021 U.S. Dist. LEXIS 31392 (S.D. Cal. Feb. 19, 2021) found *Lewis* instructive as applied to similar facts to this case. Specifically, in *Araujo*, the plaintiff alleged a § 1983 claim by arguing a Coachella Valley Water District employee "recklessly sped into an uncontrolled intersection, with no stop signs, for which the vehicle in which decedents were passengers . . . had already established the right-of-way." *Id*. at *2. "The two vehicles collided at the uncontrolled intersection, which result[ed] in a fatal automobile accident." *Id*. Specifically, in support of their § 1983 claim, the plaintiff alleged, " 'This isn't merely a cause

of someone who wasn't paying attention. It's a case about someone who was paying attention and made a conscious choice to step on the gas rather than the brake, resulting in the deaths of two young women." *Id*. at *6.

The Court disagreed and reasoned as follows:

> On an abstract level, it is true Defendant [] 'affirmatively' applied the accelerator to travel at a 61 MPH speed, exceeding the 55 MPH speed limit. [Citation.] But this allegation of an affirmative act to drive above a speed limit – and nothing more – does not establish a "deliberate decision" on the part of a government official to deprive an individual of life, liberty, or property. *Daniels*, 474 U.S. at 331. To the contrary, Plaintiffs' own allegations state that when Defendant [] was interviewed, he told police officers that he was "surprised" by the Hyundai because it "came out of nowhere," demonstrating that Defendant [] did not plan or intend to collide with the Hyundai.

*Araujo*, *supra*, 2021 U.S. Dist. LEXIS 31392, at *6. Further, the Court noted that § 1983 did not apply even when Defendant lied to the police about his actions after the fact – specifically, regarding the fact he accelerated through the intersection. *Id*. at *6-7. Overall, the Court concluded "the factual allegations in the Complaint indicate at best gross negligence, and an action sounding in tort [and] [t]he Complaint does not demonstrate that a civil rights violation or constitutional violation occurred" and thus, the defendants' motion to dismiss was granted without leave to amend. *Id*. at *7.

Here, at the end of the day, Plaintiff continues to make the same baseless accusation that Officer Miranda *intentionally* struck him with his patrol vehicle. Essentially, Plaintiff alleges that Officer Miranda knew he was in the crosswalk, but ignored this fact and proceeded through the crosswalk anyway. Opposition, at 15:4-6. Specifically, he points to sun glare in support of this allegation in that "[a]n officer who knows a child is in the crosswalk ahead of him and then loses the ability to see that child has every reason to stop." *Id*. at 15:20-22. Overall, not only is the FAC conclusory in nature, but contradicts itself. Either Officer Miranda knew Plaintiff was in the crosswalk *or* he did not. Although Plaintiff in his

Opposition asserts Officer Miranda had knowledge of his existence, the FAC *also* alleges that Officer Miranda "lost sight of his path to sun glare 'as he made the left turn,' " which evidences a *lack of* knowledge. *Id*. at 15:16-20. Overall, the facts relied on by Plaintiff in both the FAC and Opposition do not evidence any wrongful intent on the part of Officer Miranda, but rather, "th[ese] allegation[s] of an affirmative act to drive" even when the sun glare made it difficult to see demonstrate simple negligence and nothing more. *Araujo*, 2021 U.S. Dist. LEXIS at *6.

Nevertheless, Plaintiff refers this Court to the cases of *Flores* and *Hammel v. Tri-County Metro Trans. Dist. of Oregon*, 955 F.Supp.2d 1205 (D. Or. 2013) in support of his contention.[3] Opposition, at 14:16-27. However, both *Flores* and *Hammel* are distinguishable from the facts of this case. In *Flores*, the complaint alleged the defendant officer heard over the radio that five other officers were preparing for a routine traffic stop. Without any request for assistance or justification, the defendant officer raced through a residential neighborhood at speeds of up to *98 miles per hour* – nearly 70 miles per hour over the speed limit. *Flores*, 997 F.3d at 728. The officer did not properly use his lights or sirens and ultimately charged through a red light and crashed into the victim's car and killed her. *Id*.

The Seventh Circuit found the complaint's allegations of the officer's "reckless conduct, unjustified by any emergency or even an order to assist in a routine traffic stop that five officers had under control, allows the inference that he subjectively knew about the risk he created and consciously disregarded it." *Id*. at 730. In such a situation, the officer's decision "to driv[e] blind through an intersection at *78 to 98 miles per hour*" could be viewed as criminally reckless. *Id*. "The law does not provide a shield against constitutional violations for state actors who obviously take extreme and obvious risks." *Id*.

Further, in *Hammel*, a municipal bus driver hit five people crossing a street in a crosswalk. Two of the people died and three others were injured. *Hammel*, 955 F.Supp.2d at

[3] Plaintiff also refers this Court to the California case of *Lovett v. Hitchcock*, 192 Cal.App.2d 806 (1961) in support of his contention. Opposition, at 15:3. However, not only is this case based on state law alone, but is also inapplicable to the facts of this case. Specifically, the Court found a jury was properly instructed as to "wil[*sic*]ful or wanton misconduct" because the evidence established that "defendant saw plaintiff *196 feet away* in the paved portion of the roadway, and neither slowed nor sounded his horn." *Id*. at 810-11 (emphasis added).

1208. The pedestrians and their estates brought a due process claim under § 1983 against the bus driver. The district court granted summary judgment in the driver's favor on the basis of qualified immunity, but noted that plaintiffs had provided sufficient evidence regarding whether the driver consciously disregarded a significant risk. *Id*. at 1214. Plaintiffs alleged the driver was aware of unusual late-night heavy foot traffic in the area due to a comedy show just getting out, and knew the particular turn she was making was dangerous because her view into the crosswalk was partially blocked by a pole, but the driver proceeded anyway. *Id*.

Here, both *Flores* and *Hammel* are distinguishable. First, unlike here where Officer Miranda proceeded through the intersection in pursuit of the suspect's vehicle at *20 miles per hour*, FAC, at ¶ 19, the *Flores* court found the officer's conduct to constitute deliberate indifference because he was sped through an intersection between *78 to 98 miles* per hour – far exceeding the speed limit of the residential streets. *Flores*, 997 F.3d at 728. Second, unlike here where the alleged facts establish that Officer Miranda was unaware of what was in the crosswalk based on the sun glare, FAC, at ¶21; Opposition, at 15:11-24, the *Hammel* court found the bus driver had knowledge of both the unusual late-night heavy foot traffic in the area due to a comedy show *and* that the particular turn she made was dangerous based on her viewing being partially blocked by a pole. *Hammel*, 955 F.Supp.2d at 1214. Overall, both *Flores* and *Hammel* demonstrate there must be additional facts pled to establish " 'criminal recklessness – which is the same as deliberate indifference' " for purposes of a Fourteenth Amendment violation. *Flores*, 997 F.3d at 729.

It must be noted that cases that typically invoke the deliberate indifference standard are cases involving officers' deliberate indifference to the needs of people in their custody or care. *See Barrie v. Grand County, Utah*, 119 F.3d 862, 867 (10th Cir. 1997) (prison officials' deliberate indifference to the medical needs of pretrial detainees implicated due process protections); *see also Youngberg v. Romeo*, 457 U.S. 307 (1982) (state mental institution personnel were obligated to consider and make reasonable provisions for a patient's welfare). These cases, and others like them, provide examples of situations where officials had a truly extended opportunity to deliberate and nevertheless continued to consciously disregard a

significant risk of harm to those in their custody or care. For the deliberate indifference standard to have "any meaning" it must require more than just an opportunity to change a vehicle's course. *Hammel*, 955 F.Supp.2d at 1212. A traffic incident, however tragic, does not implicate the great concerns that arise between the "large concerns of the governors and the governed." *Lewis*, 523 U.S. at 848. Accordingly, count one should be dismissed.

## V. PLAINTIFF HAS INSUFFICIENTLY PLED A VIOLATION OF THE BANE ACT

As Plaintiff correctly points out, "[t]he Bane Act claim turns on the same state-of-mind showing as Count One." Opposition, at 17:9. Specifically, the Bane Act provides a private right of action against individuals who violate or interfere with a person's constitutional or statutory rights "by threat, intimidation, or coercion." Cal. Civ. Code § 52.1 "This standard requires 'more egregious conduct than mere negligence,' and focuses on the level of scienter required – specific intent to violate the plaintiff's civil rights – to establish a claim under the Bane Act." *Peterson v. City of Los Angeles*, 2026 U.S. Dist. LEXIS 69171, at *65 (C.D. Cal. Mar. 23, 2026) (quoting *B.B. v. Cty. of Los Angeles*, 25 Cal.App.5th 115, 132 (2018).

Here, both parties agree that in the event this Court finds that Plaintiff has failed to properly allege a Due Process claim under the Fourteenth Amendment, then by virtue of that decision, Plaintiff's Bane Act claim also fails. Opposition, at 17:24-18:3. Therefore, for the same reasons articulated in Section IV of the Points and Authorities, Plaintiff's Bane Act claim also fails as a matter of law. Accordingly, count six should also be dismissed.

## VI. LEAVE TO AMEND SHOULD BE DENIED

As stated in the Motion, "when the district court has already afforded a plaintiff an opportunity to amend the complaint, it has wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will its rulings be disturbed." *Rich v. Scrader*, 823 F.3d 1205, 1209 (9th Cir. 2016). Here, this Court already dismissed Plaintiff's constitutional claims in his original Complaint with leave to amend in order correct deficiencies with the Complaint. Order, at 5:3-5; Dkt. 21. Accordingly, based on Plaintiff already being provided an opportunity to remedy these deficiencies, coupled with the fact this

Court already indicated it was "skeptical that Plaintiff's pleading deficiencies can be cured by amendment," Order, at 4:4, n. 1; Dkt. 21, any request for leave to amend a *second* time should be denied.

## VII. CONCLUSION

Based on the foregoing, Defendant CITY OF BALDWIN PARK and Defendant OFFICER JEREMY MIRANDA request this Court grant their Motion to Dismiss Counts One and Six, as alleged in the First Amended Complaint, **without leave to amend and with prejudice**.

Respectfully Submitted,

Dated: September 17, 2026

JONES MAYER

By ______________________

Gary S. Kranker, Esq.
Melissa M. Ballard, Esq.
Ryan M. Allein, Esq.
Attorneys for Defendants CITY OF BALDWIN PARK and OFFICER JEREMY MIRANDA